10

1    in their interviews with the Probation Office when they were

2    representing that they were unable to make restitution at all.   I

3    think that we've got not just last spring to look at, but also

4    what's been said by the defendants about their financial situation

5    in the last month or two.

6

7        THE COURT: All right, thank you.  Anything further that you

8    wanted to express?

9        MR. ARRIOLA: Well, Your Honor, that also -- that fact that

10   they did accept the court appointed counsel, again, is evidence

11   that these people really didn't understand what was going on.  And

12   they were given, they were appointed counsel.  They had money

13   initially, and they retained a private attorney to represent them.

14

15       Now, subsequently, when the court appointed counsels and

16   were given to them, all they understood was that they were, they

17   wouldn't have to pay those court appointed counsels.  But I think

18   initially, when they retained Mr. Pierce, it was their

19   understanding that they had to pay for that service, and they did.

20

21       THE COURT: Well, they did.  They paid for Mr. Pierce's

22   service, but they didn't pay for the other two service, lawyers'

23   services.

24       MR. ARRIOLA: They, that's what they initially did when they

25   retained Mr. Pierce, paid him based on the three defendants, not on

A06643

11

one defendant.

THE COURT: Mr. Arriola, have you reviewed this file?  They filed what is called Financial Affidavits and they certified that all of the information in the affidavit is true.  And the court asked them if they know that a false or dishonest answer to any question in that affidavit can be used against them later for prosecution for making a false statement or for perjury.  And based upon the information, the court makes a determination whether they're eligible or not for court appointed counsel.  The court did that in this case.  Did you review the file?

MR. ARRIOLA: Yes.  And, Your Honor, I understand that.  I'm just, I'm relating to Your Honor what I, what information I got from my, from the defendants.  I understand all of that, and I even mentioned to them, in addition to that, all the statements that were, all the statements that were made to Your Honor were made under oath.  But, again, they kept coming back to say they were just were confused.  They, when they answered, it was based on advice.  They didn't know what they wanted to do in this case.  They just were worried that, that they didn't have a chance of winning this case, because -- and, Your Honor, all we ask is that Your Honor reconsiders its tentative ruling and just allow these defendants to go forward and prove their innocence in this case.

A00040

12

1    Thank you, Your Honor.

2         THE COURT: Thank you.  Mr. de Baca?

3         MR. de BACA: Your Honor, I'll try to be fairly brief, which

4    may be new for me, but the claims that's been made, so far, is

5    basically an untested assertion of confusion and involuntariness;

6    and, in fact, it's contradicted by all of the objective evidence

7    before the court.  Obviously, the inquiry that the court carefully

8    made at the Rule 11 hearing is the first and the best piece of

9    evidence as to whether this was a voluntary plea.  There's some

10   other objective proof of voluntariness out there.

11        For instance, Your Honor, the three plea agreements and

12   the stipulations of facts and guidelines application are all

13   different.  They're the result of individual negotiations had back

14   and forth between the government and defense counsel and the

15   defendants.  Had there just been one plea agreement that was a

16   cookie-cutter approach to all of them, perhaps, there would be a

17   little more credence to what they're claiming.  However, the very

18   content of the plea agreements indicates that this was a process

19   that the defense, the defendants were involved in; they were

20   engaged in; and that they were not just mere standers-by watching

21   their defense attorneys carve out something that they had no idea

22   what was going on.

AOOE4V

13

Your Honor, the length of time that we're talking about as well, three months or more after the entry of the pleas and the timing of this motion, coming as it did after they, the defendants had reviewed the presentence reports with their actual lawyers, strongly suggests the case of a presentencing jitters, or a presentencing change of heart.

To allow the defendants to now simply, under their assertion of confusion or involuntariness or pressure, withdraw their pleas would make the plea agreements in this case, and in every case, be simply a placeholder, something to see what the government is willing to give, to see what the presentence report comes at, and then to backup claimed confusion, and try to get out of it.

If Your Honor concludes that there is not a fair and just reason to withdraw these pleas, you don't even need to look at the prejudice or lack thereof to the government. But I will speak to that, as you had asked.

As you know, the government was within hours of going to trial in this case. We were prepared. The victims were prepared. The witnesses were prepared. The prosecutors and the agents were prepared. By pleading this case out, we took everything to a stand down. Several witnesses have moved on. One of them went back to

A00048

14

Korea. The rest are in Guam still. But we would have to come back

out, work with them again. And, in effect, start the entire

process from scratch.

The imposition of inconvenience upon the court, as well

as the judicial resources that the court has to take a look at are

other things that the court should examine in making its ruling,

and, obviously, Your Honor, having to bring in another jury pool,

having to engage in a five- to six-week trial -- sometimes we had

talked about it as being as low as three, but I think that we have

to figure that it would be somewhere between three and six weeks

total -- would be quite a bit of inconvenience not only to counsel

but to the court, prejudice to the government, flowing, again, from

the fact that, you know, we have now stretched this case out, due

to scheduling issues or defense continuances or other things, long

enough that witnesses' memories or emotional responses have faded

that much more, all of which would prejudice the government were we

to go forth.

So I urge Your Honor to not even reach the point of

looking at prejudice to the government or inconvenience to the

court because Your Honor does not need to. There is no fair and

just reason for withdrawal based on the objective evidence in this

case, objective evidence that shows that this was a voluntary plea.

n00049

15

1    As to the allegations that the defendants have been

2    making, what they're really alleging is tension, tension of

3    negotiations. What they say is pressure that was actually advice

4    of counsel. And I point out that had there been no such advice of

5    counsel and they had gone to jail after a trial for a substantially

6    lengthy period of time, they would then have turned around and made

7    an ineffective-assistance claim based on that. So I urge the court

8    to reject this and to go straight to sentencing as scheduled.

9

10    THE COURT: Mr. Baka, did you want to be heard?

11    MR. BAKA: No, Your Honor.

12    THE COURT: Mr. Arriola, did you want to reply?

13    MR. ARRIOLA: Yes, Your Honor. Your Honor, contrary to the

14    government's assertion, this is not a presentencing jitters.

15    These, these people, according to them, soon after the change of

16    plea hearing, were mulling over their actions. And, in fact, I

17    think the admission is at once that they were looking around for an

18    attorney, they did meet with another translator, and then they

19    found me before the end of last year. It's not, it's not something

20    that they just decided last week. And, also, Your Honor, this is

21    not a post sentencing motion where they're weighing, you know, the

22    potential time that they'll be spending incarcerated. They know

23    what the sentencing guidelines call for. They've gone through

24

25

A00050

16

1  that. This is not about jitters; it's not about what the
2  government said it was, tension.

3      It would be terrible if we forgo the opportunity to have
4  the defendants, give them the opportunity to prove their innocence
5  in this case. The government states that they'll be prejudiced
6  because they, after the change, after the plea agreements, there
7  was a stand down. Well, the case hasn't been concluded. Yes, they
8  did plead, but it's not over yet. They did record a lot of the
9  statements they received from their witnesses. If there was memory
10 problems, they can just bring in their witnesses and go through
11 their, their report. I don't see the prejudice there. I think the
12 fact that these people have declared their innocence and wish their
13 day in court out weighs any of the prejudice that's been claimed by
14 the government.

15     Again, Your Honor, we ask you to reconsider your
16 tentative ruling and just allow these defendants to have their day
17 in court.

18     THE COURT: Thank you. The court is ready to rule on the
19 motion. The motion is denied. It wouldn't be fair, it wouldn't be
20 just to allow these defendants to withdraw their pleas at this
21 time. They were advised of all of their constitutional rights.
22 They told me under oath that they understood every aspect of the

A00052

17

plea agreement, that they had no questions about it. They told me

that they understood all of their constitutional rights, that

they've discussed those rights with their lawyers, and they didn't

have any questions about those rights. They each stood before this

court and expressed what it is that they did, that they wanted to

enter a plea of guilty to the pleas that they did enter. They

didn't say, "because I did it;" or they didn't say, "I'm guilty."

They assented to every single element of the crime that they did it

within the jurisdiction of the Commonwealth of the Northern Mariana

Islands; that they had the intent to do what they did; and they

were advised that by entering a plea of guilty, they were giving up

all of their constitutional rights to a trial and waived or given

up their rights associated with a trial as I described them to

them.

I find that they were not intimidated; that they knew

exactly what they were saying; that they told me that they weren't

under any threat or force. And the pleas were accepted, and the

plea agreements were accepted, and they were judged guilty of the

offense.

I find that there's also prejudice to the plaintiff.

There is great inconvenience to the court, with interference with

the court's administration of its calendar to put this back on

A00053

18

1    calendar after all of the time that the court has spent with the

2    attorneys and the defendants.

3          And for all of those reasons, I think that the denial of

4    the motion is certainly justified.  And there has been no good

5    reason or cause shown to the court for the court to rule otherwise.

6

7          Now I would like to hear from Mr. Pierce, and Sorensen

8    and Williams relative to their motions to be relieved as counsel of

9    record.

10        MR. PIERCE: Your Honor, Dick Pierce.  Under the rules, Model

11   of Rules of Professional Conduct, which are the rules which are

12   adopted by this court, under declining or terminating

13   representation, of course, in a criminal context, we have to get

14   the authority of the court to completely withdraw from a

15   proceeding.  But there is, a presumption is, one, the lawyer is

16   discharged.  That's the Model Rule 1.6(a)(3).  And I think by

17   hiring Mr. Arriola, and other conversations, I have been discharged

18   by my client, and my client no longer wishes my services in this

19   proceeding.

20

21        There are other reasons, Your Honor, for terminating

22   representation, if withdrawal can be accomplished without material

23   adverse effects in the interest of the client.  Well, if the client

24   has professed a desire to have other representations, then

25

A00055

19

1    certainly for me to withdraw would not materially adverse that

2    client.

3        THE COURT: Let me interrupt you for a second, Mr. Pierce.  If

4    the court granted your motion to be relieved as counsel of record

5    in this case, would you be willing to act as counsel for the court

6    to sit by during sentencing or at any other time between now and

7    sentencing for the purpose of assisting Mr. Arriola if Mr. Arriola

8    needed your assistance?

9        MR. PIERCE: Yes, Your Honor.  I would be glad to do that.  To

10   recognize, I think -- I'm not sure there would be any kind of

11   conflict by my representation.  I could do that, Your Honor, as

12   long as it could be done without any kind of conflict between

13   myself, under the rules, and the client.

14       THE COURT: Well, you would be counsel appointed by the court

15   to standby.

16       MR. PIERCE: Yes, Your Honor.  My duties would be to Mr. Kwon,

17   Mo.

18       THE COURT: Yes.

19       MR. PIERCE: Yes.  I'll be glad to do that, Your Honor.

20       THE COURT: That would, that would be the order if you're in

21   agreement.  And the Kwons, on the record, make all of the right

22   answers relative to being represented by one lawyer.

A0005

20

1    MR. PIERCE: Yes, Your Honor.

2    THE COURT: Right.  Mr. Sorensen, you would also be agreeable?

3    MR. SORENSEN: Yes.  Yes, Your Honor, if it's the court's

4    pleasure.

5    THE COURT: All right.  And for Mr. Smith, Mr. Williams?

6

7    MR. WILLIAMS: Yes, we'd also be in agreement with that, Your

8    Honor.

9    THE COURT: All right.  Before I rule on that, I would ask the

10   clerk to, please, administer the oath to all three defendants.

11

12   THE CLERK: Will all three defendants, please, rise.  Please

13   raise your right hands.  Do you solemnly swear that the testimony

14   you're about to give in this case now before this court will be the

15   truth, the whole truth, and nothing but the truth, so help you God?

16   THE DEFENDANTS: (Through interpreter for all three) Yes.

17

18   MR. PIERCE: Your Honor?

19   THE COURT: Yes.

20   MR. PIERCE: Could we have, or could I have five minutes of the

21   court's time with Mr. Mo Kwon about something?  And certainly in

22   Mr. Arriola's presence, too.  I'm not sure.

23   THE COURT: You want to take a recess?

24

25   MR. PIERCE: Just about five minutes, Your Honor.  I think we

     might be able to resolve something here.

21

1    THE COURT: We'll take a five-minute recess or until the clerk

2    notifies the court that counsel are ready to proceed.

3         Oh, Mr. de Baca, do you want to standby for about five

4    minutes or do you want us to call you back?

5    MR. de BACA: Not a problem.  I could just standby.  I'll wait.

6

7    THE COURT: Well, you know, you know what it means when a

8    lawyer says, "I have one more question or just for, I need five

9    minutes," it may well be a while.  I think we'll call you back.

10   MR. de BACA: Okay, certainly.

11

12   THE COURT: All right, thank you.

13       (Court recessed at 10:30 a.m., Thursday, January

14       27, 2000, and reconvened at 10:45 a.m. same day.)

15   THE CLERK: Please remain seated and come to order.  This court

16   is again in session.

17   THE COURT: We're back on the record in Criminal Action 98-44.

18   All of the attorneys that have previously announced their

19   appearance are present in the courtroom.

20

21       Mr. de Baca, are you on the telephone?

22   MR. de BACA: Yes, I am, Your Honor.

23   THE COURT: The record will also reflect that all three

24   defendants and the interpreter-translator are present in the

25   courtroom.

A00050

22

Mr. Pierce, did you want to report to the court?

MR. PIERCE: Yes, Your Honor. We've had discussions with the three defendants. When I say, "we," I mean Mr. Arriola, myself, Mr. Sorensen and Mr. Williams. And it's agreed, and I certainly would prefer -- because of the affidavits that have been filed -- that the court inquire of each defendant on the record. But because of the history of the case and because the court's ruling today, we believe that it would be more effective for the defendants and for the administration of justice if the three of us again served as primary counsel, and Mr. Arriola was allowed to withdraw his appearance. In other words, the special appearance for this motion, and that Mr. Arriola will handle any appeal for the defendants.

And I also represent to the court, and certainly the court can inquire of Mr. Kwon -- if the court will recall, Mo Kwon had the, is the one who had the ability and retained myself originally for his family, too. And that's the case this time, and it's reflected in the assets in the presentence report, that Mo Kwon had the assets to liquidate and to pay for Mr. Arriola on behalf of his entire family. And so the fact that the prior affidavits related to elder Mr. Kwon and Mrs. Kwon's statements of inability to retain counsel are not inaccurate at all. We'll just

A00057

23

1    reflect -- this current representation reflects the son's assets,

2    which are in the presentence report.

3        And so if that's acceptable with the court, Mr. Arriola

4    will withdraw just, and help the Kwons on sentencing, and the three

5    of us would continue with the representation through the sentencing

6

7    phase.

8        THE COURT: This is 180 degrees.

9        MR. PIERCE: Well, Your Honor, I think Mr. -- I think Mr.

10   Arriola can certainly explain it to you. I think Mr. Arriola had

11   the, had that intent with the clients if the motion was not

12   successful.

13

14       THE COURT: All right, thank you. Mr. Arriola?

15       MR. ARRIOLA: That's correct, Your Honor. We had a meeting out

16   there and that's what I intended to do, is to help the defendants

17   with just specifically with the plea agreements, to withdraw the

18   plea agreements. And because Mr. Pierce, Sorensen, and Mr. Smith

19   had, had made or are more familiar with the history of the case, as

20   well as the preparation for sentencing, that it would be more

21   effective if they handled the sentencing phase, and I will handle

22   the, any possible appeal for this withdrawal motion.

23

24       THE COURT: Mr. Kwon, Soon Oh, is it your desire to be -- is it

25   your desire to continue to be represented by Mr. Richard Pierce in

                                        ACCESS

24

1    this matter?

2        MR. PIERCE: Eric Smith, Your Honor, for Mr. --

3        THE COURT: Pardon me?

4        MR. PIERCE: That'll be Eric Smith and Mark Williams.

5        THE COURT: Oh, I'm sorry.  Is it your desire to be continued

6
7    to be represented by Mr. Eric Smith and Mr. Williams in this

8    matter?

9        DEFENDANT SOON OH KWON: Yes.

10       THE COURT: Well, I thought your affidavit indicated that you

11
12   lost confidence in Mr. Smith as your attorney?

13       DEFENDANT SOON OH KWON: So I think I have no other choice.

14       THE COURT: Well, you can answer this question because it's

15   easy, "yes" or "no." Do you have confidence in Mr. Smith and Mr.

16   Williams' legal ability to represent you between now and the time

17   of sentencing?

18
19       DEFENDANT SOON OH KWON: Yes.

20       THE COURT: And do you want to have Mr. Smith and Mr. Williams

21   continue to represent you?

22       DEFENDANT SOON OH KWON: Yes.

23       THE COURT: Thank you.

24           Mr. Kwon, Mo Young, you are represented by Mr. Sorensen

25   in this case -- I'm sorry -- Mr. Pierce.

A00059

25

1    DEFENDANT MO YOUNG KWON: Yes.

2    THE COURT: And do you have confidence in Mr. Pierce's ability

3    to continue to represent you between now and the time of sentencing

4    in this matter?

5    DEFENDANT MO YOUNG KWON: Yes.

6

7    THE COURT: Do you want Mr. Pierce to continue representing you

8    between now and the time of sentencing?

9    DEFENDANT MO YOUNG KWON: Yes.

10    THE COURT: Meng, Ying Yu, you are represented by Mr. Sorensen,

11    correct?

12

13    DEFENDANT YING YU MENG: Yes.

14    THE COURT: Do you want to continue to be represented by Mr.

15    Sorensen between now and the time of sentencing?

16    DEFENDANT YING YU MENG: Yes.

17    THE COURT: You have confidence in Mr. Sorensen's legal ability

18    to properly represent you?

19

20    DEFENDANT YING YU MENG: Yes.

21    THE COURT: All right.  Mr. Arriola?

22    MR. ARRIOLA: Sorry, Your Honor?

23    THE COURT: Do you have anything further?

24    MR. ARRIOLA: Nothing further.

25    THE COURT: Well, I do make a finding that the defendants have

A00600

26

1   made an intelligent choice, determination, an informed choice that

2   they want to continue to be represented by Mr. Pierce, Messrs.

3   Smith and Williams, and Mr. Sorensen. And accordingly, their

4   motion is granted. Mr. Arriola's motion to be relieved as counsel

5   of record at this time -- is that correct?

6

7       MR. ARRIOLA: For any other matter, my appearance is strictly

8   for the plea agreements with the motion for withdrawal of the plea

9   agreements.

10      THE COURT: So your motion is to be relieved as counsel of

11  record in this court at this time. You're still going to have

12  these people as clients but you don't want to participate --

13

14      MR. ARRIOLA: Between now and sentencing.

15      THE COURT: Between now and after sentencing, correct?

16      MR. ARRIOLA: That's correct, Your Honor.

17      THE COURT: That motion is granted.

18

19          Now, on the court's own motion, I'm very concerned about

20  the defendants being at liberty. It appears to me that the

21  defendants may well pose a substantial flight risk at this time due

22  to the fact that they have now claimed their innocence and wanting

23  to withdraw their guilty pleas. I think this drastically changes

24  the court's feeling about their being at liberty.

25

            When the court accepted the pleas and the plea

                                                        A00062

27

agreements, it was requested that the defendants have three weeks

to clean up their affairs, and that has now been -- I forget -- a

few months.  And it is the intention of the court at this time to

withdraw their liberty and have them remanded to the custody of the

Marshal Service for fear of flight.  I will hear argument from any

counsel.

        MR. de BACA: Your Honor, the government supports that sua

sponte motion.  I think that what has happened today is a clear

indication that the mere words of the defendants is not something

that the court can rely upon absent anything else.  Furthermore, it

sounds as though, based on their representation through counsel

today, that they have perhaps more wherewithal than we've been led

to believe, and, therefore, would have more ability to flee if

their nervousness in the face of their oncoming sentencing

continues to grow.

        THE COURT: Mr. Pierce?

        MR. PIERCE: Your Honor, to comment on that, I think it's just

exactly the opposite.  We said, and I think Mr. de Baca can look at

the presentence reports, that Mr. Mo Kwon had sufficient assets

which if liquidated would garnish the fee that he's put up for Mr.

Arriola.  And so, quite the contrary, I think, and quite contrary

to the court's kind of intuitive thoughts here, if the one or more

A0066

28

1  of the defendants wanted to flee, they would have, and if they

2  could have the possibility to do so, obviously by the court's

3  feeling, they would have done so.  Instead, they did not.

4        Now perhaps I don't agree with what happened, the

5  procedures they took, but they did appeal not to flight, not to

6

7  shaky boat rides or false passports.  They, whatever assets they

8  had, Mr. Mo Kwon liquidated, they hired an attorney to appeal to

9  this court.  That is quite the behavior that -- some of the

10  contents, perhaps, the affidavits need to be explained further, and

11  we can work on that.  But as far as behaving like civilized human

12

13  beings who are obeying the court's order, they came to this court

14  and asked for assistance --

15        THE COURT: Well, --

16        MR. PIERCE: -- instead of fleeing.

17        THE COURT: Well, --

18

19        MR. PIERCE: And so the fact is that their mind frame, Your

20  Honor, is that they know they're within the system and they have to

21  work within the system.  That is a long way from having a mind set

22  on flight from prison.

23        THE COURT: I agree with you up to the point that now the

24

25  circumstances have changed and their motion has been denied.  It

occurs to me that now there's no downside risk for them attempting

A00066

29

1   to leave the Commonwealth.  They have no reason to stay and every

2   reason to leave.

3       MR. PIERCE: Your Honor, I think I have not -- obviously, I was

4   not privy to the conversations between Mr. Arriola and the people,

5   but certainly, as this court can expect that Mr. Arriola wisely

6   advised them that the chance and success on this motion were

7   extremely low, and that the -- and I'm sure that none of the people

8   came here today thinking that this court was going to, in all

9   probability, grant this request for relief; the probability was

10  low.  And I think that for us to then, therefor, jump to conclusion

11  that they are now set to, set to flee, I think, is not a

12  presumption that we should, or an inference even that we can

13  accept.  And I think their behavior is exactly the opposite.

14

15      Recall, Your Honor, and I think they still have a child

16  here.  They still, I mean, the business is ongoing down at the

17  Kwons grocery.  Certainly, if the government had evidence of

18  flight, they would present it, they would have it.  I think the

19  government before has had -- I don't know what they call them --

20  informant or something, talk about the Kwons.  If they have any

21  such evidence, they would certainly present it to this court, that

22  they're packing their bags.

23      THE COURT: What are the assets of the defendants at this time?

24

25

A0006

30

1      MR. PIERCE: Your Honor, I don't have the presentence with me.

2  Maybe -- Mr. Sorensen, do you have the presentence?  Maybe, I do,

3  Your Honor.

4      THE COURT: While you're looking for that, I see the marshal in

5  the courtroom.  Have the defendants reported all of the times

6
7  required?

8      DEPUTY MARSHAL JACOT: Yes, they have.

9      THE COURT: They have.  And that is three times a week or five

10 times a week?

11
12     DEPUTY MARSHAL JACOT: Five times a week for, I believe, the

13 two of them and for the other one, it's three times a week.

14     THE COURT: You're saying for the mother and father, two times?

15     DEPUTY MARSHAL JACOT: Yes, and for the other defendant, it's

16 three times.

17     MR. PIERCE: Your Honor, I don't think that Mr. -- I think

18
19 that Mr. Mo Kwon sold the pickup truck, Your Honor.  And that's

20 certainly an -- I know that's an asset.  We told the Probation

21 Officer back up there, giving the interview.

22     As far as Mr., the elder -- I'm referring to page 11 of

23 the presentence -- they have a total assets of $4,213.22, from the

24 savings account, two checking accounts or business checking

25 account, and then about $2,000 a month from the market, which is

A00065

31

1    the market down in old the nightclub, Your Honor. And then that

2    goes to more of the expenses. And that's for the elder Kwon. And

3    I don't recall -- I don't think that Ms. Meng had any assets, Your

4    Honor. I don't recall. Maybe Mr. de Baca can help on that. I

5    don't have that in front of me this minute.

6

7         THE COURT: All right. Anything further?

8         MR. de BACA: Your Honor, I think that we would not necessarily

9    be opposed to changing their conditions of release to have a higher

10   bond, perhaps, and more frequent checking in. We certainly don't

11   want them to be punished for having been down the garden path by a

12   new counsel who, perhaps, gave them false hope.

13

14        THE COURT: Well, I don't know that they have much to put up

15   from what Mr. Pierce has just expressed to the court. So I am

16   ready to rule on this matter. The defendants will remain at

17   liberty under all of the same terms and conditions that the court

18   has previously set.

19

20        Is there anything further to come before the court?

21        MR. PIERCE: No, Your Honor.

22        THE COURT: Mr. de Baca?

23        MR. de BACA: No, Your Honor.

24        MR. ARRIOLA: No, Your Honor.

25        THE COURT: There being nothing further to come before the

A00660

32

1   court from any counsel, we'll stand in recess at this time.   Thank

2   you.

3          (Court recessed at 11:20 a.m., Thursday, January

4          27, 2000.)

5

6   --------------------------------------------------------------

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

A00067

COMMONWEALTH OF THE          )

NORTHERN MARIANA ISLANDS )     ss.

SAIPAN, MP                   )

_____)

     I, SANAE N. SHMULL, an Official Court Reporter for the United States District Court for the Northern Mariana Islands, do hereby certify:

     That the foregoing proceeding in Criminal Action No. 98-00044, *United States of America v. Kwon, Soon Oh, Kwon, Mo Young and Meng, Ying Yu*, consisting of 32 pages, was taken down by me stenographically and with a back-up tape recording device at the time and place indicated herein, Thursday, January 27, 2000.

     That the foregoing transcript is a true and correct record of the proceeding transcribed by me to the best of my ability.

     I further certify that I am not interested in the events of the action.

     IN WITNESS WHEREOF, I have subscribed my name and signature this 5th day of June, 2000.


                                    SANAE N. SHMULL
                                Official Court Reporter